Good morning. May it please the Court, my name is Kori Hong. I'm from the Florence Project. I represent Petitioner Zabihullah Momand. And I will reserve two minutes for rebuttal. I will watch my time. I will talk about the Alford plea, the IJ decision, and then the BIA decision. On the Alford plea, Mr. Momand was convicted of the misdemeanor offense of sexual contact without consent. He entered an Alford plea, which is a highly unique criminal procedure that maintains his innocence while admitting that the jury may find him guilty. Under Gomez-Sanchez, an IJ cannot relitigate guilt, but can look at the underlying facts and circumstances of an offense to determine if the conviction is a particularly serious crime. Now, the Court looks to a spectrum of seriousness of the crimes, and an Alford plea to misdemeanor simply cannot be on the high end of that continuum. Well, I mean, it depends on the facts, doesn't it? I mean, there can be many reasons why a prosecutor might break down a felony to a misdemeanor, especially in sexual assault cases. So it could depend and would depend on the actual facts. It's not that breaking it down with an Alford plea means that it can't be serious. Yes, Your Honor, but on this record, his plea was, quote, to the bare minimum of facts, unquote. And in immigration court, what's significant is he took the stand, he took an oath, and he testified that he had a conversation with a woman. They agreed not to use a condom. They agreed to have sex. Nothing in that testimony described that the woman was in a state of impairment. So Mr. Moham's testimony and his plea explain that his conduct did not violate the actual misdemeanor or the charged felony. Although, I mean, and I understand your argument that on the record before us, we can't consider or the immigration judge shouldn't have considered without more the affidavit. But if we were to look at that, the victim or the putative victim tells a completely different story, right? Well, Your Honor, those are allegations. That's not just a police report, but a summary of multiple police reports. Over nine officers were identified, police officers, as gathering evidence, investigation. And unlike other police reports, the county prosecutor very much did not verify that any of the facts were true. She said if true, this would be the basis for probable cause. Now, the I.J. decision, Your Honor, never looked at that affidavit. Rather, at 245, the I.J. found that the crime occurred because Mr. Moham testified that the victim was under the influence of alcohol. But the I.J. mischaracterized his testimony to say that she'd been impaired or incapacitated by alcohol, an allegation and a crime that the State of Montana never brought forward. But the problem is that he did say that the evidence – he did plea to the least, you know, bare minimum that would support the crime. So he had to have pled to some degree of non-consent because the crime of which he convicted did have a non-consent element. Yes, Your Honor. And the statute is very much – it defines sexual contact to include the touching of sexual or intimate parts of the person through clothing. Right. But he had to have pled to non-consent. Well, knowing, yes, yes. But what that contact is is significant. And the I.J. said it was the level of her alcohol impairment which made it a crime. Not his – not the lack of consent, but the I.J. No, it was the lack of alcohol impairment. This all seems to me to be somewhat beside the point. But the lack of alcohol impairment was the reason for the non-consent. Well, she said he was under the influence of alcohol to a degree.  And then she speculated and mischaracterized his testimony.  I understand that. But that was the reason for the non-consent. So all I'm saying is that implicit in what the I.J. said, although she didn't actually say it, had to be that there was non-consent because of the alcohol and that the touching that you described was sufficient to be a particularly serious crime. She didn't actually say it, but she must have meant that because she didn't actually, as you noted, rely on the document. But the BIA did rely on the document. Yes. So isn't the real issue here the introduction of that document? Yes. Yes, it is. And Alcarez-Enriquez cures both issues. Right. On the I.J. issue, if she found him credible, which she did on his cat claim and then was silent on his description of the crime, she cannot both then find him guilty of a crime when his version of the events was not criminal. But on the BIA decision, that's where we have a clear Alcarez error, where there the BIA ---- And that's all that matters because that's what we have before us.  And there the BIA made its own factual finding by looking at the hearsay and said that the crime involved violence against the woman. That BIA action is improper fact-finding, and it's based on the affidavit, which under Alcarez-Enriquez was not permitted to be in the record, and the I.J. did not rely on it itself. Well, one thing that I wondered about, though, is, I mean, the whole effort seemed to be to get the woman who wrote the affidavit to testify, and there was supposedly some effort to get her. But what good would that have done? I mean, she was just reporting a bunch of hearsay. Well, I mentioned in the reply brief, and I was the attorney below, I would have liked to have interviewed her because I would have asked why, you know, the affidavit was at the beginning of the investigation, and what part of her investigation led her to reduce from a very serious felony assault into the non-serious, into a misdemeanor sexual contact. The other question I would have asked is what happened to the roommate. Was he offered an offer of plea? Was he convicted? What crime was he convicted of? Because those two facts very much would have corroborated Mr. Momon's claim that his roommate committed the assault and he did not. You made the argument that parts of the affidavit related only to the charging of a felony offense and not to the misdemeanor, but the whole thing was reviewed by the BIA. What parts shouldn't have been considered? Well, at the IJ level and the BIA, I moved to exclude all of it because it's all improper hearsay. And under – it involved a charge that was never ripened, and it involves hearsay unless, again, either under Alcarez Enriquez, either the author of the report or any of the 18 witnesses had been called by the DHS to allow for cross-examination. Well, the government's version is that the requirement is only that they make a good-faith effort. And I assume that's what we're going to be hearing in a minute. And that they made a good-faith effort to get this woman to come. So what's your response to that? Well, the government focuses on good faith. Good faith doesn't matter. It's the question, what effort did the DHS take? And the efforts were just simply inadequate. The DHS attorney never complied with the IJ rules to provide a witness list. He never submitted that to the court. When she was supposed to appear on November 2nd, the – he never told the IJ she's available only during specific windows, so can we call her first? He never made for that instead. At the end of testimony, without skipping a beat, simply said she was unavailable. Never even tried to reach her. He never said at the end of the hearing that he'd like to call her. She said, I assume you'll call her. And he said, if necessary. And then on November 15th, again, he never filed a witness statement. He never called her. And it began the hearing by simply saying she's not available today. And never asked for a continuance, never provided a good-faith effort to actually bring her into court, which was over video. And she could have appeared by video. On remedy, the parties disagree on remedy, where the government simply wants the court to remand the proceedings on an open record for the BIA to redo everything. The request that I'm making is a directed remedy. We want one after the BIA says that the BIA got it wrong by engaging in the fact-finding and relying on the affidavit. And the IJ got it wrong by relying on speculation. So the directions would be to redo the PSC after the IJ makes an express credibility finding on the crime issue, and then only on the evidence that's in the record, which is either based on the conviction records and Mr. Momon's testimony, or, if necessary, give an opportunity for the DHS to call the witness again. But that is a matter of discretion of the court. Well, I don't know. Would they have to get to the merits or essentially determine the merits in determining that he was going to get deferral of removal on the Catt claim? I'm sorry. In other words, do they have to get to the merits of the withholding claim? Of asylum, because the IJ granted Catt, which is something that the DHS never appealed. And so if the particular serious crime is made, then the IJ can revisit the asylum case, but will then take into account the fact that she's already granted the Catt claim and found that he's more likely than not to experience death or torture, rather. And if there are no further questions, may I reserve my remaining time? Yes. Good morning or afternoon. May it please the Court, my name is Craig Newell, and I'm here on behalf of the Attorney General. Our position is that remand is the appropriate outcome here, because the Board did not adequately consider this evidentiary objection based on Alcarez and Enriquez. And the resolution to that objection may alter the parameters of the evidence that the agency may consider in the inherently discretionary decision of whether Mr. Momon committed. Why wouldn't we simply rule that the admission of this document was improper? Why do they have to consider that? And what is there to consider? Isn't the law clear that it was improper? This Court, at the moment, Alcarez-Enriquez does not give much guidance on how to decide what is or is not a good-faith effort. Well, what exactly is the pertinence of that anyway? I mean, if this is unreliable evidence, it's unreliable evidence, whether it has good faith or non-good faith. If there is a good-faith effort, then, according to Alcarez-Enriquez, it can be taken into consideration, given the way it's due. It didn't exactly say that. It said that there was not a good-faith effort, but it didn't say what happened if there was, right? What it did is it simply did what we are asking here for, is a remand for a proceeding that comports with the INA's procedural rules. Alcarez-Enriquez recognizes that on that remanded proceeding, the DHS could bring that as a probation officer into immigration court and have that cross-examination. This is not an improper request for a second bite of the apple. This is the normal course of business when there is a lacking in the board's decision. So, counsel, would hypothetically what I'm about to say be the same as what you're suggesting, or would it be different? That if we said that, on the record before us, there was insufficient ground to admit the affidavit, so we're going to grant the petition or grant the petition in part and remand. Would that be materially different than what you're saying? No, no, Your Honor. Well, it seems it would be, because you seem to be saying that the BIA could come to the conclusion that the exclusion was proper. If, according to how Judge Bennett worded it, at the moment, based on the record before it, it was insufficient because there, I think it's implying that there was this good faith. Right. So why do they get to make it twice? If you do not make the good faith inquiry, then the board should. It's a pretty fact-intensive thing. What I'm asking is this. As I understood what Judge Bennett said, if we say, on the record, before us, the admission of this document was improper under Alcarez y Rincas, why would they get to do it again and just consider again whether to admit the document? You're right, Your Honor. I started going down the wrong path. You are right. Under that, yes, you have made the, you have decided that there was insufficient, you have decided that the DHS's efforts weren't sufficient. They weren't, they didn't amount to the good faith effort required by Alcarez. In that case, it is sent back and just So why should the agency have a second bite at the apple? The case already existed. The issue already existed. There are good reasons to believe that there were, which were just outlined, that there wasn't a good faith effort, whatever that means. There was absolutely no showing as to why this person wasn't coming and why she couldn't have been, why the government couldn't have asked for a continuance to ever come. So why would we do it again? If the court makes that ruling on the no good faith effort, then the remand is to reassess the evidence excluding this probable cause after David. That's different than what you're asking for. You're right. That's taking it one step farther. And if this court is going to address the good faith effort, there is sufficient evidence to find that DHS made the affirmative effort. So, counsel, would we have the discretion to say there wasn't a sufficient basis in the record for this affidavit, but we're going to send it back for the BIA or for the agency to do it again without barring further evidence? Do we have the discretion to do that? Yes, your honor. There is a little bit of a choose-your-own-adventure to this decision. The thing that the court should not do, it should not categorically rule out his conviction as being a particularly serious crime. When Mr. Momon talks about this spectrum of seriousness, it's still this very, it's a weighing of all these factors, and you can't just have this categorical rule out of a crime or not, because it all depends on the facts and underlying circumstances. And so that's why even though he pled, he had this Alfred plea, which while he maintained his innocence, the board recognized that, but it is a recognition that there's strong evidence of your guilt to that crime. That's strong evidence that there was non-consensual sexual contact. Yes, the elements of this misdemeanor sexual assault is a more minor touching, but you do have his own testimony that the victim, that he had sexual intercourse with the victim, and that she was inebriated. So the board, the immigration judge, as the fact finder, could reassess all this and possibly find it still to be a particularly serious crime, even excluding that probable cause. But that should be a decision that the agency gets to make in the first instance. The particular serious crime determination is one that Congress delegated to the Attorney General and her delegates at the board and in the immigration ranks. And that's why the ordinary remand rule applies to this case. And that's all we are asking for here. It is up to the court. Just to be clear, that wasn't all you were asking for. That's all you're asking for now. That wasn't all you were asking for, because you were asking for the opportunity for the BIA to reconsider whether the document should be admitted. We've already been over that. Right. I am asking for that, and if the court doesn't want to go that way, this is what I – this is at bottom what we were asking for. Go back with the even regardless of whether you get to use the affidavit that you get to present evidence. Nope. That it's a particularly serious crime. That this crime – yes. Excluding the probable cause affidavit, is that what you're asking? I'm saying you're asking for an ordinary remand where you would have the opportunity to present evidence. The evidence is already in the record. There is his testimony. Okay. So you're not asking for the ability to present any new evidence? No, Your Honor. The evidence is there. It's up to – first, if this court is going to address the good faith effort inquiry on its own, we argue that it should find that DHS made that good faith effort. It shouldn't require her clean effort. But if the court is going to say no, DHS's efforts were insufficient, it should remand for the board and or the immigration judge to consider it based on the more restricted parameters of the evidence. Would the BIA have the – in what you've just described, in your view, would the BIA have the ability to send it back to the IJ with the possibility of new evidence, or is that foreclosed if we were to do what you just said? I don't think it's foreclosed because even Alcaraz and Riquez recognize that there's potential on remand for the availability of the cross-examination. So Ms. Paddock could be cross-examined if she is brought in, and that would rejigger the evidence in and of itself, whether she's persuasive or not, and then it would affect your opinion on Mr. Momon's testimony. So they would be using the affidavit then? Yes, if Ms. Paddock is brought in for cross-examination, yes, yes. But then depending on Ms. Paddock's answers to Ms. Hong's questions, you would know how much weight or no weight you would get to that probable cause affidavit. Am I correct the police reports were never introduced? No, Your Honor, they were not. Okay. So if I'm correctly interpreting what you're saying, that if we were to do this, you couldn't go back and say, well, we're going to now put in the police reports with some names redacted? I don't think so, Your Honor. That's not normally how this would work. And I think the burden, the particular serious crime burden still falls on the applicant, and so whatever evidence there is, that is the evidence we use to make that determination. And so there are no further questions. For the reasons I provided and those in our brief, this Court should remand this case. Thank you, Your Honors. I have three points. May I ask you a question? Of course. How do you envision the remand? Would there be additional evidence or not? I would argue not. Algaraz and Riquez provided the opportunity because that was a whole new rule that was not known at the time that the I.J. had his hearing. Here, this was the first objection, and when I made that first objection before the I.J., the D.H. said, oh, well, I'll find her then, and never did. So the D.H.S. was aware of the burden, aware of the risk, and he has to bear the choices of his litigation strategy. So my request for the remand is, I mean, the BIA finding at 6 says that his argument that the document's author was not available for cross-examination is without merit. So it should be a clear showing that the BIA decision was wrong on this, that very much Algaraz and Riquez controls, and that Algaraz and Riquez requires a Sixth Amendment right to confrontation. The D.H.S. attorney did not comply with that rule. It knew about that rule and made the choice not to call a witness to comply with it. It had its bite at the apple. So I would request for a remand to say that the BIA made a mistake, and it is very much instructed to redo the PSC a determination based on the evidence that is properly in the evidence, properly in the record, which are the conviction documents, Mr. Momon's testimony, and not the affidavit. But that evidence, as we were saying before, would include the statement at the Alfred plea that he was stipulating to the barest minimum, so it would be whatever the barest minimum is. The barest minimum of facts. That stipulation, though, also said that anything that would implicate immigration consequences is being contested and not being conceded. So that very surgical plea must be taken into account. Did you want anything else? No, Your Honor. Are there no further questions? All right. We thank counsel for their arguments, and the case just argued is submitted. Thank you.
judges: BERZON, BENNETT, Tunheim